JERNIGAN *v.* HARRIS.

4-3179

Opinion delivered July 3, 1933.

*C. W. Norton* and *John Sherrill,* for appellant.
*Roy D. Campbell,* for appellee.

SMITH, J. This appeal questions the constitutionality of acts 131 and 132 passed at the 1933 session of the General Assembly.

Act 131 provides the means whereby the cities and towns of the State may purchase, construct, and improve waterworks systems, and operate them. The act provides that these municipalities may, by ordinance, provide for the issuance of revenue bonds, which ordinance shall set forth descriptions of the contemplated improvement, the estimate of costs, the rate of interest, and time and place of payment, and other details in connection with the issuance of the bonds, from the proceeds of the sale of which the waterworks are to be purchased, constructed or improved. The act declares a statutory mortgage lien upon all property to be acquired or constructed,

and directs the city or town council to fix the minimum rate for water to be collected from the users of the water, and pledges the revenues derived from the waterworks system for the purpose of paying such bonds and the interest thereon, which pledge shall definitely fix and determine the amount of revenues which shall be necessary to be set apart and pledged to the payment of the principal; that the rates to be charged for the service of the waterworks shall be sufficient to provide for the payment of interest upon all bonds and to create a sinking fund to pay the principal thereof as and when they become due, and to provide for the operation and maintenance of the system, and also an adequate depreciation fund.

The act further provides that the bonds shall be payable solely from the revenues derived from the waterworks system, and shall not, in any event, constitute an indebtedness of the municipality within the meaning of any constitutional inhibition. The act provides that the statutory mortgage lien securing the payment of the bonds and the interest thereon may be, if necessary, foreclosed by a suit in equity.

Section 9 of the act reads as follows: "For the purpose of acquiring any waterworks system under the provisions of this act, or for the purpose of acquiring any property necessary therefor, the municipality shall have the right of eminent domain as is provided in § 4009 of Crawford & Moses' Digest of the Statutes of Arkansas (and any acts amendatory or supplemental thereto)."

By § 18 of the act it is provided that: "Said revenue bonds shall be exempt from all taxation, State, county and municipal; this exemption including income taxation, inheritance taxation as well as all forms of property taxation."

It was alleged that the provisions of the act referred to are violative of various sections of the Constitution of the State.

Act 132 contains many provisions similar to act 131, and the same constitutional objections are offered to it.

By the provisions of act 132 the cities and towns of the State are authorized to construct, own, equip, operate, maintain and improve sewage plants, and to authorize charges against the owners of real estate within such cities and towns for the use of same, and for the collection of such charges, and to authorize cities and towns to issue revenue bonds, payable solely from the revenues from such systems. Section 13 of act 132 directs the city and town councils to pass ordinances "to establish and maintain just and equitable rates or charges for the use of and the service rendered by such works, to be paid by each landowner whose premises are connected with, and use, such works by or through any part of the sewerage system of the city or town, or whose premises in any way use, or are served by, such works." The councils are charged with the duty of changing and adjusting such rates or charges from time to time to such extent as will not render insecure the rights of the holders of the revenue bonds, the proceeds of the sale of which are to be used in the construction, etc., of the sewage system.

This § 13 of the act provides that: "It is the intention of this act that a landowner shall be liable for such service charge, even though the use of the sewer system is by his tenant or lessee; but vacant, unoccupied property not actually using such works shall not be subject to a service charge." It is provided that these rates or charges shall be sufficient for the payment of operation, repairs and maintenance, and "for the payment of the sums herein required to be paid into the sinking fund."

It is further provided that all rates or charges, if not paid when due, shall constitute a lien upon the premises served by such works, "said charges to constitute a lien upon the fee title to the land and permanent improvements, even though the occupant receiving the benefit of the service for which the rate or charge is due has merely a leasehold interest (or other lesser estate) in the premises," and that the service charge or rate may be recovered by the sewer committee of the council by a suit in the chancery court, where a lien shall be declared and foreclosed to enforce the payment.

Act 132 contains provisions similar to those of act 131 exempting the bonds from taxation and authorizing condemnation proceedings in accordance with § 4009, Crawford & Moses' Digest, and acts amendatory thereof.

The appellant filed a complaint in the Woodruff Chancery Court, in which he alleged that he was the owner of a lot in the town of McCrory, which he was occupying as a homestead, and that the council of the town of McCrory had passed ordinances pursuant to both acts, under which a waterworks system and a sewage system would be installed unless that action were restrained, and he prays that relief as against both systems. The causes were consolidated and heard on a demurrer thereto, which the court sustained. The plaintiff declined to plead further, and both complaints were dismissed, and from that decree is this appeal.

We proceed to consider the objections made to the constitutionality of the legislation.

It may be first said that the power of cities and towns to install sewage systems and waterworks is universally recognized. The health, as well as the comfort and convenience of persons living together in close relation and in large numbers require the existence of such powers, and a sewage system would be valueless unless the power inhered to require all property owners to make physical connections with the sewers.

The existence of this power was clearly recognized in the case of *Dinning* v. *Moore,* 90 Ark. 5, 117 S. W. 777. That was a suit under § 5525, Kirby's Digest (now appearing as § 7593, Crawford & Moses' Digest) which provides that the board of health of any city may direct property owners to make connections with adjacent sewers, with a provision that, upon their failure to make such connection, it shall be the duty of the board of health to have it made and to charge the property therewith, and to enforce payment of the cost thereof against the property by a suit in the chancery court. The power of the city to pass such an ordinance and to enforce its provisions was not questioned, but the relief there prayed was denied solely upon the ground that the board of

health had not properly entered the necessary orders of record to bind the owner whose property was sought to be charged.

It is insisted that the attempt to make the provisions of § 4009, Crawford & Moses' Digest, and acts amendatory thereof, available to the district are violative of § 23, of article 5, of the Constitution, and are not sufficient to incorporate that legislation into acts 131 and 132, and that there is therefore a lack of power to exercise the right of eminent domain which will probably be required to make either or both systems effective.

We quoted § 9 of act 131 above, and the same provisions appears in act 132, the effect thereof being that the municipalities "shall have the right of eminent domain as is provided in § 4009, Crawford & Moses' Digest, of the Statutes of Arkansas, and any act amendatory or supplemental thereto."

Such legislation, known as a reference statute, is quite common, and is uniformly upheld. It refers to another statute to regulate the procedure to make its provisions effective, and legislation would be very cumbersome and difficult if such acts were not held valid. For instance, it was contended in the case of *Wilson* v. *Magnolia Petroleum Co.*, 181 Ark. 391, that § 5745, Crawford & Moses' Digest, providing that chancery courts shall have concurrent jurisdiction with the circuit courts to remove the disability of minority in the same way and manner as is provided for the removal thereof by circuit courts in § 5744, Crawford & Moses' Digest, was unconstitutional because it violated article 5, § 23, of the Constitution, which provides, in effect, that no act may be amended by reference to its title, but that so much thereof as is revived, amended, extended, or conferred, shall be reenacted and published at length. In overruling this contention we there said: "The two sections of the statute exist as separate and distinct legislative enactments. The later act in no manner attempts to amend or change the existing requirements as to the removal of the disabilities of minors. It simply confers the power upon the chancery courts to remove their disabilities, and pro-

vides that it shall be done under an existing statute as to the procedure. In other words, it confers upon the chancery court the power to remove the disabilities of minors, and provides the same procedure in executing the power as already existed in the case of circuit courts. (Citing cases.)'' See also *Winton* v. *Bartlett,* 181 Ark. 669, 27 S. W. (2d) 100; *State* v. *McKinley,* 120 Ark. 165, 179 S. W. 181; *House* v. *Road Imp. Dist.,* 154 Ark. 218, 242 S. W. 68; *Grable* v. *Blackwood,* 180 Ark. 311, 22 S. W. (2d) 41; *Arkansas State Highway Commission* v. *Otis & Co.,* 182 Ark. 242, 31 S. W. (2d) 427; *Shepherd* v. *Little Rock,* 183 Ark. 244, 35 S. W. (2d) 361; *Dozier* v. *Ragsdale,* 186 Ark. 654, 55 S. W. (2d) 779.

We conclude therefore that neither act violates § 23 of article 5 of the Constitution.

It is attempted in both acts to exempt from all forms of taxation any of the bonds authorized by each of the acts.

Section 5 of article 16 of the Constitution provides that all property subject to taxation shall be taxed according to its value, in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State, and provides also the property which shall be exempt from taxation. Section 6 of the same article of the Constitution provides that ''All laws exempting property from taxation other than as provided in this Constitution shall be void.''

It would appear therefore that this provision of the act exempting the bonds from taxation is void, at least when such bonds are held by any person or agency whose property is not otherwise exempt from taxation. *Clallam County, Washington,* v. *United States Spruce Products Corporation,* 263 U. S. 341, 44 S. Ct. 121; *United States* v. *Coghlan,* 261 Fed. 424; *United States Shipping Board Emergency Fleet Corporation* v. *Delaware County, Pa.,* 17 Fed. (2d) 40; *United States Housing Corporation* v. *City of Watertown,* 186 N. Y. Supp. 309; *United States* v. *City of New Brunswick,* 11 Fed. (2d) 476; *United States* v. *Mayor and Council of City of Hoboken, N. J.,*

29 Fed. (2d) 932; *State of Alabama* v. *United States,* 38 Fed. (2d) 897.

This exemption does not however render either act void, for the reason that each act contains identical sections reading as follows: ''The sections and provisions of this act are separable and are not matters of mutual essential inducement, and it is the intention to confer the whole or any part of the powers herein provided for, and if any of the sections or provisions or parts thereof is for any reason illegal, it is the intention that the remaining sections and provisions or parts thereof shall remain in full force and effect.''

We have uniformly held that, where a statute is unconstitutional in part, the valid portion will be sustained if complete in itself and capable of being executed in accordance with the apparent legislative intent. These acts are both complete and capable of being executed in accordance with the legislative intent expressly declared in the section quoted, and the acts must therefore be upheld, notwithstanding this exemption and its consequent unconstitutionality as applied to persons or agencies whose property would otherwise be subject to taxation. *Nixon* v. *Allen,* 150 Ark. 244, 234 S. W. 45; *Marshall* v. *Holland,* 168 Ark. 449, 270 S. W. 609; *Alsup* v. *State,* 178 Ark. 170, 10 S. W. (2d) 9; *Stanley* v. *Gates,* 179 Ark. 886, 19 S. W. (2d) 1000; *State* v. *Hurlock,* 185 Ark. 807, 49 S. W. (2d) 611.

The provisions of § 13 of act 132, hereinabove referred to, providing for the sale of the fee for a service charge due by an occupant in possession under a lesser estate is not subject to the objection that one owner is required to discharge a burden which the law has imposed upon another. It is the theory of the acts that, before either improvement is begun, the cost thereof shall be ascertained and shall be paid with the proceeds of the sale of bonds, which are to be discharged, together with operating expenses, etc., by charges against the real estate, ratably fixed in such manner that these charges will accumulate the money with which to pay the bonds.

A sewer is a permanent improvement, and, if properly maintained, lasts indefinitely. It adds to the value of the fee as well as to the value of the mere right of occupancy, and the property thus served pays the installments of cost as they mature.

A case declaring the legal principle here involved was that of *Crowell* v. *Seelbinder*, 185 Ark. 769, 49 S. W. (2d) 389. There a question arose between the owner of the remainder and the owner of a lesser estate as to liability for the annual assessments due upon the property thus owned in an improvement district. We there held that the equitable distribution of the burden of paying the annual assessments requires the life tenant to discharge these assessments during each year of his occupancy. Yet, the entire fee would have been sold had this burden not been discharged, for the reason that the assessments were a lien upon the fee. But, as between the owners of the two estates, it was the duty of the occupant to pay installments maturing during his occupancy. So here the remainderman may require the owner of the lesser estate, as between themselves, to discharge rates maturing during the continuance of his estate, but, if neither pays these charges, the entire estate may be sold, for the reason that the entire estate has the benefit conferred upon the land by the sewer system.

The plaintiff has alleged that he occupies his property in the town of McCrory as a homestead, and he insists that act 132, which authorizes the sale thereof under a decree of the chancery court, if he does not pay the rates and charges of his sewer connection, is violative of § 3 of article 9, of the Constitution. This section provides that the homestead of any resident of this State, who is married, or the head of a family, shall not be subject to the lien of any judgment or decree of any court, except such as may be rendered for the purchase money, to enforce certain specific liens, or for taxes, or against certain persons sued in their fiduciary capacity.

It was contended in the case of *Shibley* v. *Fort Smith & Van Buren District*, 96 Ark. 410, 132 S. W. 444, that an act of the General Assembly creating an improve-

ment district to construct a bridge across the Arkansas River was void, because assessments imposed under the authority of the act were made liens on the homesteads of residents of the district, which might be enforced by decrees of courts, in violation of § 3 of article 9, of the Constitution. It was held, however, that these assessments were in the nature of taxes against which there was no right of homestead exemption.

The liens which may arise under act 132, and which may be enforced pursuant to its authority, are not taxes within a strict definition of that word, but they are of that nature. More properly, they are burdens imposed pursuant to the exercise of the police power, to and for the validity of which the consent of the property owner is not essential. It is a burden imposed *pro bono publico*.

At § 1463 of Dillon on Municipal Corporations, vol. 4 (5th ed.), page 2621, it is said: "It has been decided, in Massachusetts, that authority to make needful and salutary by-laws, or perhaps authority to make regulations for the public health, will, in the absence of more specific power, authorize a city to construct a *common sewer,* and to subject the owners of the lots or land abutting, and who use the sewer, to contribute for the expenditure." See also *First State Bank of Sutherlin* v. *Kendell Lumber Corporation,* 107 Or. 1, 213 Pac. 142.

It is urged that the acts are violative of § 4, of article 12, of the Constitution, which prohibits any municipality from levying a tax to a greater extent in one year than five mills on the dollar of the assessed value of the property in the city or town; and also that the acts violate § 1, of article 16, of the Constitution, which provides that no city or town shall ever loan its credit for any purpose whatever, nor ever issue any interest-bearing evidences of indebtedness.

A single answer will dispose of both objections. The municipality, as such, does not incur any obligation on account of the bond issues, nor does it assume any responsibility for their payment, nor can payment be enforced out of taxes or other municipal revenues. It is provided in each act that the bonds to be issued shall be

payable solely from the revenues of the proposed systems, the waterworks, in one case, the sewer system, in the other, and that such bonds shall not, in any event, constitute an indebtedness of such municipality within the meaning of the constitutional provisions or limitations, and that it shall be plainly stated on the face of each bond that the same has been issued under the provisions of the respective acts and do not constitute an indebtedness of such municipality within any constitutional or statutory limitation.

In the case of *Mississippi Valley Power Co.* v. *Board of Improvement Water Works District No. 1,* 185 Ark. 76, 46 S. W. (2d) 32, a waterworks improvement district found it necessary to expend large sums of money, which it did not have on hand, for engines and replacement expenses. A property owner in the district sought to prevent this action, upon the ground that the district could only incur such an obligation after having been authorized so to do upon the petition of property owners. Under the terms of the contract for the purchases required by the district, it was provided that the purchase price was payable only out of the savings in the cost of pumping the water "and shall never be held to create any liability or general obligation upon the said district, and no taxes, general or special, shall ever be levied upon the real estate or other property in said district or hereafter within the district, to pay all or any part of said sum of $23,560 or any interest thereon." In holding against the contention of the protesting property owner that the district was without power to incur the obligation, we there said: " 'It is, in effect, a cash transaction, where the payments are to be made *pari passu* with the accumulation of the fund, and the only fund, out of which they are to come.' *Smith* v. *Town of Bedham,* 144 Mass. 177, 10 N. E. 782. Appellant insists, however, that, notwithstanding the notes or instruments are payable out of the 'savings fund,' they are none the less a debt, bearing interest, and are purchase-money notes for machinery, of which title is retained until their payment. The courts have held, however, that contracts of this

character did not create debts within the purview of constitutional or statutory prohibitions against incurring debts as the only recourse in the contract which the selling company has in the case of the failure to pay the purchase price is to retake the machinery. It is a contingent liability only, for which a general tax cannot be levied, and does not constitute a lien upon the power plant, nor its revenues. It can be paid only on the contingency that the district derives enough net revenues from the consumers of water and lights furnished by the plant to pay such notes after payment of all expenses of operation, and, as said in *Bell* v. *Fayette,* 325 Mo. 75, 28 S. W. (2d) 356: 'There is no aspect to that situation which could make the agreement to pay in the manner provided a debt of the city. It is a contingent purchase, the property to be paid for only out of the net earnings which it produces; the seller takes a chance on that contingency.' (Citing numerous cases).''

In the case of *McCutchen* v. *Siloam Springs,* 185 Ark. 846, 49 S. W. (2d) 1037, it was held, (to quote a headnote) that ''A contract with a city to construct a power house and install necessary equipment therein and providing for payment solely from the light plant's earnings *held* not to violate amendment No. 10 forbidding a contract in excess of revenue for the current year.''

As to amendment No. 13, it may be said that it has no application here, as there is no attempt to exercise any of the powers conferred by it.

We conclude therefore that neither act violates any of the constitutional provisions which appellant insists render it unconstitutional. The decree of the chancery court must therefore be affirmed, and it is so ordered.

MEHAFFY, J., dissents.