CITY OF HARRISON *v.* BRASWELL.

4-7904                                         194 S. W. 2d 12

Opinion delivered April 15, 1946.

Rehearing denied April 13, 1946.

*J. Smith Henley,* for appellant.

*Virgil D. Willis,* for appellee.

McHANEY, Justice. Sometime in 1945, the date not being shown, the city council of the city of Harrison, a city of the second class, passed ordinance No. 371, entitled "AN ORDINANCE TO PROVIDE FOR THE HEALTH AND SAFETY OF THE INHABITANTS OF THE CITY OF HARRISON, ARKANSAS, BY IMPROVING, ENLARGING, EXTENDING, REPAIRING, ALTERING, CORRECTING AND REBUILDING THE PRESENT WATER AND SEWER SYSTEMS OF SAID CITY; TO AUTHORIZE THE ISSUANCE OF WATER AND SEWER REVENUE BONDS OF SAID CITY, INCLUDING THE REFUNDING OF SEWER REVENUE BONDS OF SAID CITY NOW OUTSTANDING; PLEDGING WATER AND SEWER REVENUES FOR THE PAYMENT OF THE BONDS HEREIN AUTHORIZED; AND DECLARING AN EMERGENCY."

The preamble to the ordinance sets out a number of reasons for its enactment, some of them being, (a) that the city owns a debt-free waterworks system which is inadequate and is supplied by an inadequate water source, and that the council has determined the need of improving same, has caused plans and specifications to be made for such improvements, and that the cost thereof will be $140,000; (b) that it also owns a sewerage system which is inadequate, but on which it owes a balance of $97,000 in sewer 4 per cent. revenue bonds to the R. F. C., which has agreed to sell same to the city at a substantial discount and without accrued interest, a great saving to the city, and reciting the imperative need for enlarging and extending same, according to plans already made, at an estimated cost of $175,000, an amount sufficient to refund the R. F. C. debt and to make the improvements contemplated; and (c) that the council believes "the two improvements can be carried on as one project, although their respective costs can be separately determined and charged to each operation, but the city will receive a better offer for its bonds and will receive the advantage of a lower interest rate if it can sell the two issues to-

gether or join the two issues into a combined water and sewer revenue issue.''

The ordinance contains 13 sections, the last being the emergency clause. The other sections provide (1) for the expansion of the existing waterworks system at an estimated cost of $140,000; (2) the improvement and extension of the existing sewer system at an estimated cost of $175,000, including the refunding of the debt to R. F. C.; (3) finding the value of the present water system to be $40,000, and of the improved system to be $180,000; (4) finding the present value of the sewer system to be $97,000, and of the proposed improvements to be $78,000, or a total value of $175,000, when improved; (5) appoints a water and sewer committee, naming them, to have charge of construction of improvements and of operations after completion for both projects. Section 7 provides for advertising the sale of bonds under three alternatives: ''(1) a sale of water revenue bonds separately; (2) a sale of sewer revenue bonds separately; and (3) a sale of a joint issue of water and sewer revenue bonds.'' It provides the form of the advertisement, setting out the date of the proposed issues (May 1, 1945) and the maturities each year to 1975 for each alternative. It also provides for the following in the advertisement: ''If separate revenue bonds are issued, they will be separately secured by a pledge of the revenues from the respective operations for which they are issued, but with the additional provision that the surplus in each operation will be pledged, if necessary, to meet any deficiency in the revenues of the other operation, and if the bonds are combined in a joint issue, then the revenues of the two operations will be treated as a single fund and will be pledged to the payment of the joint revenue issue.''

Section 8 of the ordinance pledges the city to use, when necessary, any available net surplus revenue of either system to pay the bonds and interest of the other, or the whole net revenue if the two are combined, in accordance with said advertisement. Section 9 provides the city will pass the necessary ordinance or ordinances for the execution and delivery of the bonds, including the pledging of revenues of the systems, ''the granting of

the statutory mortgage on the systems, with all the rights and remedies provided by the statutes for the enforcement and collection of revenue bonds,'' and will fix adequate rates for the services to pay said bonds and interest thereon, the reasonable expenses of the operation and maintenance of the plants, with provision for depreciation and replacement, which rates shall never be reduced while any of said bonds issued are outstanding, but may be increased, if necessary. Section 10 provides that all bonds issued ''shall be payable solely from the revenues pledged—and shall not constitute an indebtedness of the city of Harrison within any constitutional or statutory limitation.''

Appellee, a resident property owner, taxpayer and user of both the sewer and water systems of the city, brought this action to have said ordinance declared invalid and to enjoin its enforcement on several grounds, some of which will be hereinafter discussed. The city answered admitting the allegations relating to the status of appellant and that the water system of the city is debt free, that the sewer system owes $97,000, and that the above ordinance had been passed. It denied all allegations of invalidity of said ordinance. Further answering, the city set up certain affirmative defenses and prayed that the complaint be dismissed. Appellee demurred to said answer upon the ground that it did not state a defense to the complaint. The court sustained the demurrer, holding that said ordinance is unconstitutional and that the city should be restrained from proceeding under it. The city declined to plead further and its answer was dismissed. This appeal followed.

It appears to be conceded, and it must be admitted, that the city can make the proposed improvement to its debt-free waterworks system and issue $140,000 in revenue bonds payable solely from the net revenues from such system under the provisions of Act 131 of 1933, as amended by Acts 3, 96 and 107 of 1935 and Act 178 of 1943; and the same thing is true with reference to the sewer system under the provisions of Act 297 of 1937, that is, it can issue a combined series of refunding and new construction sewer revenue bonds to pay R. F. C. and

make the proposed improvements to the sewer system, payable solely out of the net revenues arising from the operation of the sewer system. *Jernigan* v. *Harris,* 187 Ark. 705, 62 S. W. 2d 5. A number of other cases have cited and followed the Jernigan case. See Shepards Arkansas citations.

Appellee contends, however, that the city of Harrison, while it has the power to pledge the net revenue from each system to the payment of the revenue bonds issued by each it does not have the power to pledge or to apply any surplus net revenue of one system to payment of the bonds of the other system. In other words, that if there be any surplus net revenue arising from the operation of the waterworks, the city may not use such surplus to pay bond obligations of the sewer system and *vice versa*. We cannot agree that this is true. A case in point to the contrary is *Johnson* v. *Dermott,* 189 Ark. 830, 75 S. W. 2d 243, where it was held that the city of Dermott might lawfully pledge and use "the profits derived from the operation of these plants" (water and light) as security for bonds issued to build a city hospital. Act 178 of 1943, which amends Act 131 of 1933, provides in § 1: ". . . ; and if a surplus shall exist in the bond and interest redemption account, the same may be applied by the legislative body in its discretion, subject to any limitations in the ordinance authorizing the issuance of bonds or in the trust indenture, (a) . . . ; (b) . . . ; (c). . . . ; or (d) to any other municipal purpose." We think this language authorizes the proposed pledge of net surplus of one system to pay the bonds of the other. It is well known that many municipalities use the surplus revenue arising from utilities owned and operated by them to finance many municipal purposes. We do not think the case of *Mathers* v. *Moss,* 202 Ark. 554, 151 S. W. 2d 660, relied on by appellee, is in point here. This decision was prior to Act 178 of 1943, hereinafter referred to, and supplied the authority the court said was lacking.

We are also of the opinion that the city may, if it so elects, combine the two systems and issue water and sewer revenue bonds with a pledge of the net revenue

of both as the sole security therefor. It must be borne in mind, however, that § 2 of said Act 178, which amends § 10 of said Act 131, as amended, provides that the value of the existing water system shall be declared and also the value of the property proposed to be constructed, and that the revenues from the entire system when completed shall be divided according to such values, "and that so much of the revenue as is in proportion to the value of such betterments and improvements as against the value of the previous existing plant as so determined, shall be set aside and used solely and only for the purpose of paying the revenue bonds issued for such betterments," together with costs of operation and depreciation, or shall provide that all or any part of the surplus in the bond and interest redemption account, as provided for in § 1, shall be used for the same purpose.

If the city can issue two separate series of revenue bonds and support each issue by a pledge of the surplus revenue for the other, as we have already held, we fail to see why the two proposed issues may not be combined into one issue with a pledge of the entire net revenue of both systems to support the revenue bonds issued for both. Nor does the fact that the water system improvements will be financed under the provisions of said Act 131, as amended, and the sewer system under said Act 297, affect the city's right and power to combine the two proposed issues into one. Both properties belong to the city, and it appears to be logical and reasonable to operate them as one project. A sanitary sewer system without water would be a total loss, and a water system without a sanitary sewer system would be impractical, if not entirely useless. So each complements or supplements the other. The demurrer admits that the combination of the two will effect substantial savings in costs of operation—clerical hire, collections of bills for service charges, office space, etc. Also, that the combined issue may be sold at a much lower rate of interest on its bonds, and for a better price than if sold separately. We see no constitutional or statutory objection to a combined issue.

Appellee argues that a pledge of the surplus revenues of one to pay the bonds of the other would be an

unlawful diversion of funds. We cannot agree. It must be remembered that we are not here dealing with the question of the power of the city to divert funds arising from taxation to a purpose other or different from that for which the tax was levied. Nor can it be said that the security of any creditor of the city is in any manner impaired. Payments by the users for the service rendered is not a tax within the meaning of the constitutional provision of art. 16, § 11.

We have several times held that the revenue bonds issued pursuant to the acts here involved payable solely from the revenues, do not constitute debts of the municipalities. *McCutcheon* v. *Siloam Springs, supra.*

Appellee also contends that said Ordinance No. 371 is unconstitutional because it contemplates the placing of a lien or mortgage on the debt-free water system, in violation of amendment No. 10. Appellant, the city, denies that it is its purpose to encumber the existing water system. The ordinance in § 9 does provide, among other things, for ''the granting of the statutory mortgage on the systems, with all the rights and remedies provided by the statutes for the enforcement and collection of revenue bonds, . . .'' This clause in the ordinance is, in effect, a mere repetition of the language used in § 7 of said Act 131, which provides: ''There shall be and there is hereby created a statutory mortgage lien upon the water-works system so acquired or constructed from the proceeds of the bonds hereby authorized to be issued,'' etc. We construe this language to mean that the statutory mortgage lien shall extend to and cover only the new and additional betterments to the water system constructed with the funds allocated to this purpose, and that such lien does not cover the existing plant. In this view amendment No. 10 cannot be involved, as the city incurred no liability payable out of its revenues or existing property. *Snodgrass* v. *Pocahontas*, 189 Ark. 819, 75 S. W. 2d 223; *Jernigan* v. *Harris, supra.*

Other incidental questions have been argued, all of which we have carefully considered and find them without merit.

Our conclusion is that the court erred in sustaining the demurrer to the answer and in dismissing same. The decree is reversed, and the cause is remanded with directions to overrule the demurrer to the answer and for further proceedings not inconsistent with this opinion.

ED. F. McFADDIN, Justice, dissenting. The majority holding is revolutionary! The reasons for my dissenting opinion:

1. The rule has always prevailed in Arkansas that a municipality possesses and can exercise only such powers as are granted in express words, or such powers as are necessarily implied from or incident to the powers expressly conferred, or such powers as are essential to the accomplishment of the declared objectives and purposes of the municipality. *Bennett* v. *City of Hope,* 204 Ark. 147, 161 S. W. 2d 186; *McGehee* v. *Williams,* 191 Ark. 643, 87 S. W. 2d 46; *Cumnock* v. *Little Rock,* 154 Ark. 471, 243 S. W. 57, 25 A. L. R. 608; *Argenta* v. *Keith,* 130 Ark. 334, 197 S. W. 686, L. R. A. 1918B, 888; *Merrill* v. *Van Buren,* 125 Ark. 248, 188 S. W. 537; *LaPrairie* v. *City of Hot Springs,* 124 Ark. 346, 187 S. W. 442; *Willis* v. *City of Fort Smith,* 121 Ark. 606, 182 S. W. 275; and *Bain* v. *Fort Smith Light & Tr. Co.,* 116 Ark. 125, 172 S. W. 843, L. R. A. 1915D, 1021. See, also, 37 Am. Juris. 722.

There is no statute in Arkansas that allows a municipality to combine water improvement bonds with sewer refunding and improvement bonds. So, the majority, in allowing the City of Harrison to so combine its bond issues, is giving the City of Harrison a power that the Legislature has never granted. That the majority is doing this very thing is shown by the following quotation from the majority opinion: "We are also of the opinion that the city may, if it so elects, combine the two systems, and issue water and sewer revenue bonds with a pledge of the net revenue of both as the sole security therefor."

The Legislature has always kept water works bonds separate and distinct from sewer system bonds. Witness the fact that Act 131 of 1933 refers to water works

and Act 132 of 1933 refers to sewage systems. If the Legislature had intended for the two systems to be combined, it would have passed one act instead of two. Witness also the fact that in the various amendments to Act 131 of 1933 (some of such amendments are: Acts 3, 96 and 107 of 1935; Act 135 of 1939; and Act 178 of 1943) the water works act was kept separate from the sewage act. Witness also the fact that Act 297 of 1937 (which is the revenue bond refunding act) specifically preserves the distinction between Act 131 of 1933 and Act 132 of 1933. Thus, I submit that the majority is allowing the city to combine separate systems into one bond issue, in entire disregard of the legislative effort to keep the systems separate.

2. There is no statute in Arkansas allowing a city to pledge a debt-free water works system to secure an already existing bond issue on the sewer system, yet that is exactly what the majority is permitting the City of Harrison to do in the case at bar. As long as the water works system remained debt-free (or bonded only for its own improvements under Act 131 of 1933, and amendments there) then the city would have available a source of revenue to meet its other municipal requirements, under Amendment No. 10. Now, the majority is permitting that source of revenue to be mortgaged away to secure defaulted sewer bonds.

3. To sustain the pledge of excess net revenues of the water system to pay the sewer bonds, the majority cites the case of *Johnson* v. *Dermott,* 189 Ark. 830, 75 S. W. 2d 243. But the situation existing in the reported case does not exist in the case at bar. The net revenue of the Dermott Water Works went into the general revenue of the city and was expended therefrom. In holding that the City of Dermott might pledge the excess revenue from the water works system, we said: "But this power may not be exercised in violation of Amendment 10 to the Constitution. Any contract which the city makes in regard to uncollected revenues from any source must be construed with reference to this amendment. Parties cannot, by pleadings or stipulations of any kind, abro-

gate this amendment which will be read into any contract which the city may make.''

In the case at bar the revenue from the water works will be pledged first to secure the $140,000 of revenue bonds, and the excess net revenue from the water works, when pledged over against the sewer bonds, must be governed by Amendment 10 to the Constitution, even under the case of *Johnson* v. *Dermott, supra,* relied on by. the majority.

Furthermore, the case of *Johnson* v. *Dermott*—in so far as it allowed the City of Dermott to pledge the net excess of water works revenue as security for the hospital bonds—has been considerably weakened by the later case of *Mathers* v. *Moss,* 202 Ark. 554, 151 S. W. 2d 660. In that case we held that the revenues from the water system could not be devoted or appropriated to the payment of the cost of operation of the sewer system. Hence the language: ''Act 132 of 1933, appearing as §§ 9977, *et seq.,* Pope's Digest, contemplates that revenue bonds authorized to construct sewers will be .paid from the revenues derived from that service. Likewise, act 131 of 1933, appearing as §§ 10001, *et seq.,* Pope's Digest, contemplates that the revenue bonds authorized to construct waterworks shall be paid from the revenues derived from that system. There is nothing in either act which authorizes any part of the revenues derived from one system to be devoted and appropriated to pay the cost of construction or operation of the other.''

This quoted language says that the revenues.from one system are not authorized to be devoted or appropriated to the cost of the operation of the other system; and yet in the face of this quoted language the majority is granting the City of Harrison a right that was denied the City of Dumas in the reported case.

4. Finally, the majority -says that Act 178 of 1943 ''authorizes the proposed pledge of net surplus of one system to pay the bonds of the other,'' and cites that act as changing the rule of *Mathers* v. *Moss, supra.* Act 178 of 1943 clearly states that the determination of excess

revenue should be made *each year*. The act uses the expressions as, (a) "during the remainder of the fiscal year then current," (b) "during the fiscal year then next ensuing," (c) "during the then next present fiscal year," (d) "the next ensuing fiscal year," and other similar expressions which, beyond the peradventure of a doubt, show that the determination of whether there is a net surplus, must be made on a yearly survey; and that it is only after such annual determination has been made for *the then existing fiscal year and next ensuing fiscal year,* that any part of the net surplus from the water works can be used for any purpose except the retirement of the bonds. In the face of this language in Act 178, the majority in the case at bar is allowing the present city council of Harrison to make a determination *now* that will pledge all the excess revenues, and bind all succeeding councils for *the next thirty years*—since the bonds proposed to be issued have a final maturity extending for thirty years. I submit that Act 178 of 1943 does not reasonably admit of the interpretation given it by the majority.

For these reasons, I respectfully dissent.

GRIFFIN SMITH, Chief Justice, dissenting. Express provisions of Pope's Digest, § 10005—the so-called Water Act—are that bonds ". . . shall be payable solely from revenues derived from the waterworks system." Section eight of Act 297 (Pope's Digest, § 11358) carries the provision that bonds ". . . shall be payable from and secured by a lien upon the revenues of the enterprise." It is my view that if effect is given these enactments the obligation to pay bonds binds only revenues arising from the particular system the securities are issued to finance.

The majority opinion in the appeal before us appears to rest upon the precarious proposition that if the city wishes to accomplish a purpose thought to be desirable by those who have acted officially, the result should not be impaired for want of legal authority.

*Johnson* v. *Dermott*, 189 Ark. 830, 75 S. W. 2d 243, held that the municipality might pledge profits earned

by a water and light system and thereby secure bonds sold for the purpose of building a city hospital, and this case is cited by the majority. But there the bonds were not issued under provisions of a statute. Effect of the decision was to say that Dermott had power to take the questioned action regardless of the General Assembly's failure to legislate in that respect, conditioned that Amendment No. 10 should not be invaded.

The City of Harrison-Braswell opinion says that Act 178 of 1943, amending Act 131 of 1933, permits a city council to authorize application of net surpluses to any municipal purpose. I think there is a fundamental distinction between *applying* excess funds as a matter of administration, and in *pledging* such revenues. In the first case the money is used at the instance of the council as necessity may from time to time require; but where there is an irrevocable pledge, as proposed here, *all* surpluses are tied to the transaction consummated by the ·pledging council. No future administration may touch the fund, or interfere with what its predecessor has done.

Certainly there is nothing in Act 132 of 1933, (the Sewer Act) or in Act 297 of 1937, authorizing a pledge of surplus funds for the payment of securities issued by a water system; nor does Act 178 of 1943 appear to have contemplated that result. Neither was it loosely written with the idea that an avenue of entry could be found by resort to "construction" or implication, judicially invoked.

The majority says that Act 178 of 1943—this being an amendment to the Water Act of 1933—provides in Section 1 that ". . . if a surplus shall exist in the bond and interest redemption account, the same may be applied . . . to any other municipal purpose."[1] This statement is followed by the expression: "We think this language authorizes the proposed pledge of net surplus of one system to pay the bonds of another."

This is a transposition or transportation of language so much clearer to the majority than it is to me that, in

---

[1] There is no similar provision in Act 297 of 1937 or any other act.

attempting to follow its lead, I feel more secure in hesitating where the law has stopped, and beyond which there does not appear a tangible implication. Indeed, to concur in the result would require acquiescence in an operation sometimes spoken of as engraftation; for, after holding that surplus funds from the sewer system may be pledged as security for water bonds, the opinion applies a parity process and creates a community of interest when it says: "If the city can issue two separate series of revenue bonds and support each issue by a pledge of the *surplus* revenue for the other, we fail to see why the two proposed issues may not be combined into one issue with a pledge of the *entire net revenue* of both systems to support the revenue bonds issued for both."

The primary difficulty would seem to be that neither statute contains such a provision.

In holding that contracts such as the one now being approved are not in violation of Amendment No. 10 it is said that prior decisions sustain the point. The cases cited were decided before Acts 131 and 132 of 1933 were passed. The Dermott decision was the court's construction of the law *after* the 1933 legislation became effective. Mr. Justice BUTLER, speaking for the court regarding excess revenues arising from operation of the water and light systems, said:

"But this power must not be exercised in violation of Amendment No. 10 to the Constitution. Any contract which the city makes in regard to uncollected revenues from any source must be construed with reference to this amendment. . '. . This amendment [provides that] no allowance shall be made 'for any purpose whatsoever in excess of the revenues from all sources for the fiscal year in which said contract or allowance is made.' Beyond this inhibition there is a lack of power to contract."

The Dermott case was heard on demurrer. It admitted that the city would not exceed its budget through use of revenues in the manner they were sought to be applied.