(No. 26050.—

THE CITY OF EDWARDSVILLE, Appellee, *vs.* ELIZABETH
JENKINS, Appellant.

*Opinion filed April 15, 1941.*

J. F. EECK, for appellant.

PERRY H. HILES, and D. M. BUCKLEY, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The circuit court of Madison county entered judgment
against appellant in the sum of $74.25 as charges for use
of an intercepting sewer and sewage treatment plant con-

structed under the so-called Sewer System act as amended in 1934. Cahill's Stat. 1935, chap. 24, p. 731.

The cause comes here on direct appeal on the ground· that constitutional questions are involved. Appellant argues that the Sewer System act as amended at the fourth special session of the General Assembly, is invalid, first, as not within the scope of the call of the Governor for such special session, and so violates section 8 of article 5 of the constitution of this State limiting the authority of the General Assembly to matters within the call. It is also urged that the act authorizing the construction of the intercepting sewer and treatment plant is invalid as authorizing an indebtedness within section 12 of article 9 of our constitution, and permitting the financing of a local improvement in a manner not authorized by sections 9 and 10 of article 9 of our constitution. It is also argued that the act complained of violates the due process clauses of our State and Federal constitutions.

The title of the act complained of, as amended is: "An act authorizing cities, villages, incorporated towns and sanitary districts, having a population of less than 500,000 to construct or acquire, improve and extend a sewerage system, impose and collect charges and rates for the use thereof, issue revenue bonds payable solely from the revenue derived from the operation of such system or improvement, or extension in payment thereof, to provide for the operation of such sewerage systems, and contract in relation thereto." Cahill's Stat. 1935, chap. 24, p. 731.

The title of the act of 1933, (Cahill's Stat. 1933, chap. 24, p. 619,) was as follows: "An act authorizing certain municipalities to improve or construct or acquire and improve a sewerage system and to issue revenue bonds payable solely from the revenues derived from the operation of such system in payment thereof, and to provide for the operation of the sewerage systems."

The Governor's proclamation authorized the General Assembly to amend or repeal any existing laws "to authorize and enable the State, its municipal corporations * * * to enter into contracts with, to coöperate with, and to receive financial aid from, the United States Government and its agencies, and, in every way to comply with the terms and provisions of the laws of the United States relating thereto," etc.

Section 2 of the act of 1933 provided that any municipality could borrow money from the "Reconstruction Finance Corporation." No provision was made authorizing the borrowing of funds from the "Federal Emergency Administration of Public Works." That agency had, at the time of the issuance of the Governor's proclamation, been but recently organized, and section 3 of the amendment of 1934 authorized the borrowing of funds from that agency. The act amended was in existence at the time of the special session of the General Assembly and came within the Governor's proclamation, (*People* v. *Kelly*, 357 Ill. 408,) and so did not violate section 8 of article 5 of our constitution. Moreover, the amendment was necessary if the municipalities of the State were to borrow funds from the last named governmental agency.

Appellant says, however, that the construction of an intercepting sewer and sewage treatment plant is a local improvement and that under sections 9 and 10 of article 9 of our constitution the General Assembly may not authorize a municipality to pay for same by rental charges for the use of it, but the same must be financed by special assessment or special or general taxation. Her counsel cite in support of that contention, *Northwestern University* v. *Village of Wilmette*, 230 Ill. 80. In that case it is pointed out that the district created by the improvement ordinance was not co-extensive with the limits of the village and this court said that this showed "conclusively that in the

judgment of the village board all the property in the village will not be benefited by the construction of the improvement, and generally this court has held that water mains and sewers placed in the streets of a village or city are local improvements and can be paid for by special assessment of the property benefited." It is also there pointed out that the test as to whether an improvement is local or general depends upon whether it specially benefits the property assessed, and so it is. Whether an improvement is local depends not upon the character of the improvement, nor the kind of service it is to render, but upon whether the benefits arising therefrom are special and local. *City of Chicago* v. *Blair,* 149 Ill. 310.

The ordinances adopted by the city of Edwardsville, are known in this record as ordinances No. 600 and No. 604. Ordinance No. 600 authorized the extension of the existing sewer system by the construction of intercepting sewers, pumps and stations and a sewage treatment plant, to collect and treat the sewage of the sewer systems of the city, and provided for the issuance of $154,000 revenue bonds for part cost of construction, said bonds to be payable solely from the income of said sewer system; other funds were furnished by the Federal government. It also provided that the ordinance should be published once in the *Edwardsville Intelligencer,* a newspaper of general circulation in the city, and that if no petition should be filed with the city clerk within ten days after the publication, signed by fifteen per cent of the voters for mayor at the last preceding general election, asking for a referendum, then the ordinance to be in full force and effect. The ordinance was accordingly published and no such petition was filed.

Ordinance No. 604 authorized the city to collect rental charges for the use and services of the sewer system, and accordingly classified and established the rates for the dif-

ferent users of the system,—*i.e.*, rates for private homes, for business houses, for schools, etc. These rates were to be determined on the basis of the meter readings of the Edwardsville Water Company showing the number of gallons of water used, nearly all of which would pass through the sewers, during the months of January, February and March of each year. This ordinance further provided that in the event charges for sewer service were not paid within sixty days, such charges could be made a lien on the real estate served, by filing a sworn statement of the city clerk in the office of the recorder of deeds.

The sewer system was improved by building new lateral sewers on each side of the city, which connected with the sewers already in existence. The lateral sewers led to a disposal plant, which, along with two intermediate pumping stations, was also a part of the project, thus the entire city was served and benefited directly and indirectly by the project. It will be seen that the project was in nowise a local improvement.

This project is more akin to a public utility such as a municipally owned system of waterworks. The benefits arising therefrom are general and not local. It would be impossible to justly levy special assessments to finance such a project, as the intercepting sewers and treatment plant could not be said to specially benefit one piece of property more than another. Statutes authorizing a municipality to acquire or construct and operate a waterworks system to be paid for solely from revenues to be derived therefrom, have been uniformly upheld as not in violation of sections 9 and 10 of article 9 of our constitution, and where no property of the city is pledged to secure the payment of the bonds authorized such a plan does not increase the municipality's indebtedness and so does not violate section 12 of article 9 which limits the amount of indebtedness a municipality may incur. (*Simpson* v. *City of Highwood,*

372 Ill. 212; *Hairgrove* v. *City of Jacksonville,* 366 id. 163; *Ward* v. *City of Chicago,* 342 id. 167.) We are of the opinion that the plan provided for in these ordinances, since the service rendered is public, may be considered a public utility for the same reasons that a city-owned water-works plant is so considered.

Appellant also contends that the act violates the due process clauses of the State and Federal constitutions for the reason that it authorizes the filing of record of unpaid charges for use of the system as a lien against the property of the delinquent user. One of the ordinances here involved likewise so provides. However, no attempt is here made to act under such provision of the act and ordinance. No charges were filed as liens against appellant's property. She was sued in an action of debt. It is an established rule in this State that one may not complain of the invalidity of a statutory provision which does not affect him. *People* v. *Day,* 313 Ill. 531; *People* v. *Dickmann,* 285 id. 97.

It is not contended that the rates established or the method of fixing them is unreasonable. The record shows that the water-meter readings for the months of January, February and March were taken for the reason that water used during those months would practically all go through the sewer as no yard sprinkling was done during those months.

The act and, therefore, the ordinances authorized by it, are not, as applied to the facts of this case, in violation of the constitutional provisions invoked. The circuit court's judgment is right and is affirmed.

*Judgment affirmed.*