PAUL LAVERENTS and ROBERT B. MYERS, on behalf of themselves and all others similarly situated,

*Plaintiffs and Appellants,*

vs.

CITY OF CHEYENNE, a Municipal Corporation, BENJAMIN G. NELSON, as Mayor of said City, LEO A WATERS and A. W. TROUT as City Commissioners of said City, and LILLIAN C. FLEMING, as Acting Clerk of said City,

*Defendants and Respondents.*

(No. 2464; April 25th, 1950; 217 Pac. (2d) 877).

188

For the plaintiffs and appellants the cause was sub-

mitted upon the brief of Clyde M. Watts of Cheyenne, Wyoming, and also on the oral argument of Mr. Watts and Mr. A. D. Walton of Cheyenne, Wyoming.

For the defendants and respondents the cause was submitted upon the brief and also oral argument of George F. Guy and Carleton A. Lathrop, both of Cheyenne, Wyoming.

Rodney M. Guthrie of Newcastle, Wyoming, filed a brief amicus curiae in the cause but did not appear for an argument.

192

## OPINION.

Blume, Justice.

This is an action brought by citizens and taxpayers of Cheyenne to test the validity of an ordinance of the City of Cheyenne under which, and pursuant to a vote of the people, the city proposes to issue revenue bonds in an amount not to exceed $1,100,000 for the purpose of constructing a sewerage disposal plant. The town of Newcastle has filed a brief in this case as amicus curiae.

We have heretofore held that a municipality has no power to issue revenue bonds without legislative authority. Whipps vs. Greybull, 56 Wyo. 355, 109 P. 2d 805, Lakota Oil & Gas Co. vs. Casper, 57 Wyo. 329, 116 P. 2d 861, Jensen vs. Afton, 59 Wyo. 500, 143 P. 2d 190. See also In the Matter of the Organization of the Sheridan County Power District et al. vs. C., B. & Q. R. R., 61 Wyo. 365, 157 P. 2d 997. We have now a case before us involving revenue bonds duly authorized by the legislature.

Section 29-2702 of the statutes of Wyoming (part of Article 27) as amended by Chapter 129 of the Session Laws of Wyoming of 1949, provides among other things, as follows: "Any municipality is authorized to construct, reconstruct, improve and extend, or acquire, improve, extend and operate a sewerage system, within or without the corporate limits of such municipality. * * * Any municipality may issue its revenue bonds for such purposes, payable solely from the revenues derived from the operation of such sewerage system by such municipality." Section 29-2704, Wyo. Comp. St. 1945 provides: "All bonds issued under the provisions of this Act shall be payable solely

from the revenues derived from the operation of such sewerage system and such bonds shall not, in any event, constitute an indebtedness of the municipality within the meaning of any constitutional provision or any constitutional or statutory limitations. It shall be plainly stated on the face of each bond that the same has been issued under the provisions of this Act and that it does not constitute an indebtedness of the municipality within any constitutional or statutory limitation." Section 29-2705 provides: "All revenues derived from the operation of such sewerage system shall be set aside as collected, and deposited in a special fund of such municipality and used only for the purpose of paying the cost of operating and maintaining such system, providing an adequate depreciation fund and paying the principal and interest on the bonds issued by the municipality under the provisions of this Act." Section 29-2706, supra, provides: "Any municipality borrowing money and improving or constructing or acquiring and improving a sewerage system under the provisions of this Act, is authorized and directed to charge and collect from the users of such system at a rate which shall be sufficient at all times to pay the cost of operating and maintaining such system, provide an adequate depreciation fund and pay the principal and interest on the bonds issued by the municipality under the provisions of this Act. Any municipality that owns and operates or that may hereafter own and operate a sewerage system constructed or acquired under the provisions of any law of this state may, by ordinance, provide that the users of such system shall pay a service rate sufficient to defray the cost of operating and maintaining such system, and of providing an adequate depreciation fund thereof and thereafter such municipality is authorized to charge and collect such service rate for such purpose but no tax or other charge shall thereafter be assessed against the users of

such sewerage system for such purpose." Section 29-2711, supra, provides for submitting the proposition of issuing such bonds to a vote of the people.

Pursuant to the legislative enactment, the city authorities of the City of Cheyenne on March 14, 1949, adopted an ordinance, numbered 857 providing for the construction of a sewerage disposal plant for the City of Cheyenne, Wyoming, as an addition to the present sewer system and the issuance of revenue bonds in the amount hereinbefore set forth, the bonds to mature from 1951 to 1975 inclusive, and payable in the approximate sum of $40,000 to $48,000 each year. The ordinance provides among other things: "said bonds shall be paid, principal and interest, solely out of the revenues to be derived from operating the sewerage system of said City, which revenues are hereby pledged for the purpose of paying the cost of operating and maintaining said plant and system, providing an adequate depreciation fund and paying the principal of and interest on such revenue bonds; and * * * it is proposed that the City shall charge and collect from the users of said sewerage system, service rates which shall be sufficient to make the payments, and * * * the City Council will adopt a supplemental ordinance containing such provisions as are permitted by the law under which such bonds shall be issued." The ordinance further provided for submitting the question of the issuance of such revenue bonds to the people at an election to be held on April 19, 1949. Such election was accordingly held and the issuance of such bonds was duly approved by a majority vote of the electors voting at the election.

Thereupon plaintiffs herein brought a suit against the City of Cheyenne and its officials to restrain the issuance of the foregoing bonds, on the ground that

such issue would cause the indebtedness of the city to exceed the amount of indebtedness permitted by Section 5, Article 16 of the Constitution of Wyoming, which insofar as applicable here is as follows: "no city, town or village, or any other subdivision thereof, or any subdivision of any county of the State of Wyoming, shall, in any manner create any indebtedness exceeding 2 per centum on the assessed value of the taxable property therein; provided, however, that any city, town or village may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of building sewerage therein." Trial in the case was had without jury and judgment was rendered by the District Court on September 28, 1949, denying the petition and prayer of the plaintiffs and dismissing it, and that defendants have judgments against the plaintiffs accordingly. From that judgment the plaintiffs have appealed to this court by direct appeal.

I. Counsel for the city claim that the revenue bonds proposed to be issued herein are not general obligation bonds of the city and hence not a debt within the contemplation of Section 5, Article 16 of our Constitution. Counsel for the plaintiffs on the contrary claim that these so-called revenue bonds are merely a subterfuge to evade the constitutional limitation above quoted; that the bonds become a present debt of the City of Cheyenne and when issued will exceed the constitutional limitation. That is the only question raised herein. Counsel argue that the court should stop wasteful extravagance of the city. Our function in that respect, however, is limited. As we stated in Donovan, et al. vs. Owen, et al. 52 Wyo. 479, 491, 76 P. 2d 339, 343, speaking of an irrigation district: "We

have no power to arrogate to ourselves the right to become the economic or financial guardian of the district. We must be content with the humbler duty, imposed upon us by the Constitution, of declaring the law as we see it, just as we did in the case of Arnold vs. Bond, 47 Wyo. 236, 34 P. 2d 28." In Interstate Power Co. vs. McGregor, 230 Ia. 42, 296 N. W. 770, 146 A. L. R. 315, 324, the court calling attention to the fact that legislation authorizing revenue bonds had been enacted in 40 states says: "Under this legislation projects of widely varying types have been so financed. The soundness or expedience of such legislation is a matter of which this court can take no cognizance, as this is a matter for the determination of the legislature." The supreme court of Utah in Utah Power & Light Co. vs. Ogden City, 95 Utah 161, 79 P. 2d 61, 66, speaking of the same subject has this to say: "How far the principle of this familiar transaction may be feasibly extended into the public utility field of cities and towns is rather a legislative question, embracing as it does complicated questions of engineering, finance, consumption, costs, earning capacity, etc. These matters are within the province of the municipal authorities, acting within the scope of their lawful powers. The governing bodies of cities and towns are the sole judges as to the wisdom, policy, and expediency of acquiring and operating public works. Courts do not interfere except in cases of clear excess or abuse of their lawful powers and authority."

The "special fund" doctrine, including the issuance of revenue bonds or certificates has been known and recognized for over half a century. Apparently the first case recognizing the doctrine is the case of In re Canal Certificates, 19 Colo. 63, 34 P. 274 decided in 1893. In that case the legislature provided for the issuance of certificates to pay for the construction of

a canal. The court said: "The expenses of construction of the canal in question are to be met in part by certificates of indebtedness. Both principal and interest of these certificates are only to be paid out of funds received for the carriage of water or in payment for lands. The act expressly provides against any indebtedness being incurred on the part of the state, and therefore is not in conflict with the constitutional provisions heretofore considered by this court, fixing a limitation upon state indebtedness." The next case, decided in 1895, is Winston vs. City of Spokane, 12 Wash. 524, 41 P. 888, involved revenue bonds for the construction of waterworks. The court said: "For the purposes of this case, it must be conceded that said waterworks will, in addition to supplying the money for the creation of such fund, as provided for in said ordinance, pay all the expenses incident to their operation, and for that reason the creation of such special fund can occasion no liability upon the part of the city to make any payment out of its general funds. This being so, we are of the opinion that neither the ordinance, the contract, nor the obligation to be issued by the city in pursuance thereof, do or will constitute a debt of the city, within the constitutional definition. The only obligation assumed on the part of the city is to pay out of the special fund, and it is in no manner otherwise liable to the beneficiaries under the contract. The general credit of the city is in no manner pledged, except for the performance of its duty in the creation of such special fund. The transaction, therefore, is no more the incurring of an indebtedness on the part of the city than is the issue of warrants payable out of a special fund created by an assessment upon property to be benefited by a local improvement." Since that time over 200 cases from 33 different jurisdictions have been decided upholding the rule stated in the foregoing cases. Annotations on the subject

will be found in 72 A. L. R. 688, 96 A. L. R. 1385, 146 A. L. R. 328. In the last citation it is said: "Since the publication of the earlier annotations on this subject, there has been a great increase in litigation involving so-called revenue bonds. The recent cases support the general rule, stated in the original annotation, that the purchase or construction of a public utility or other property by a municipality or other political subdivision to be paid for wholly out of the income and revenue from the property so acquired, without any other liability on the part of the public body, does not give rise to an indebtedness within the meaning of an organic debt limitation." Late decisions all supporting what has been said are: Waterworks Board of City of Mobile vs. City of Mobile (Ala.) 43 So. 2d 409, Williams vs. Harris (Ark.) 224 S. W. 2d 9, Walinske vs. Detroit-Wayne Joint Building Authority, 325 Mich. 562, 39 N. W. 2d 73, Taxpayers, etc. vs. City of Mobile (Ala.) 41 So. 2d 597, Castle Farms Dairy Stores vs. Lexington Market Authority (Md.) 67 Atl. 2d 490, Bader Realty & Inv. Co. vs. St. Louis Housing Authority (Mo. App.) 217 S. W. 2d 489, Selle vs. City of Henderson, 309 Ky. 599, 218 S. W. 2d 645. See also Words and Phrases, Vol. 11, page 304, under the term "debt", 38 Am. Juris. 150, 44 C. J. 1131, 59 C. J. 225, Sec. 370.

It would be impractical and subserve no good purpose to attempt to review many of the cases decided on the subject. About the only jurisdiction in which revenue bonds, limited as in this state, now are held to be within constitutional limitations of indebtedness is the state of Idaho, as shown in the cases of Feil vs. City of Coeur A'Alene, 23 Ida. 32, 129 P. 643, 43 L. R. A. N. S. 1095, Miller vs. City of Buhl, 48 Ida. 668, 284 P. 843, 72 A. L. R. 682. In substantially all the other states from which counsel for plaintiffs cite

cases, revenue bonds of the character here involved are held not to be general obligation bonds. We shall mention only the most important of the cases cited by counsel. Fowler vs. City of Superior, 85 Wis. 411, 54 N. W. 800, is not in point for the reason that in that case, while a fund was created, the municipality agreed to pay the indebtedness involved unconditionally and absolutely. In City of Joliet vs. Alexander, 194 Ill. 457, 62 N. E. 861, a municipality desired to extend its waterworks and proposed to issue certificates secured by a mortgage on the existing waterworks and on the extension, and the question was whether or not this undertaking would create a debt of the city. The court held that it would. But it said: "What is said relative to mortgaging property owned by the city, or pledging its existing income, is not intended to apply to a mortgage purely in the nature of a purchase-money mortgage, payable wholly out of the income of property purchased, or by resort to such property." The Illinois Supreme Court has in a number of cases recognized as not within constitutional limitations revenue bonds limited as are those under our statute. Among their cases in City of Edwardsville vs. Jenkins, 376 Ill. 327, 33 N. E. 2d 598, 134 A. L. R. 891. In the case at bar no mortgage on any property of the city whatever is proposed to be given. The case of Lesser vs. Warren Borough, 237 Pa. 501, 85 Atl. 839, 43 L. R. A. N. S. 839, generally speaking, strongly supports the view of counsel for plaintiffs herein. But even that case is distinguishable. A municipality purchased waterworks and proposed to create a special fund out of which the purchase price might be paid, and also proposed to mortgage the waterworks as security. It was held that such transaction would create an indebtedness within the contemplation of the limitations in the Constitution. The case is in conflict with City of Joliet vs. Alexander, supra. In the later case of

Tranter vs. Allegheny County Authority, 316 Pa. 65, 173 Atl. 289, it was held that a statute authorizing a public corporation to take over highways for the purpose of making self-liquidating improvements, and authorizing the corporation to pledge revenues of the property taken for loans, was not void as creating a debt of the county within a constitutional provision limiting indebtedness. It may be noted in that case no mortgage on any property was given and thus is more directly in point in the case at bar. In Zachary vs. City of Waboner, 146 Okla. 268, 292 P. 345, cited by counsel for the plaintiffs the special fund was partially fed by a tax. So the case is distinguishable. In the later case of Baker vs. Carter, 165 Okla. 116, 25 P. 2d 747, the court stated as follows: "An examination of many authorities cited in the brief and a research of many others conducts us to the conclusion that, so far as the special fund doctrine is concerned, the majority rule as set forth in the case of Garrett vs. Swanton et al., (216 Cal. 220, 13 P. 2d 725) announces the correct rule that a limitation upon state or municipal indebtedness is not violated by an obligation which is payable out of a special fund, if the state or municipality is not liable to pay the same out of its general fund should the special fund prove to be insufficient and the transaction by which the indebtedness is incurred cannot in any event deplete the resources of the state or the municipality."

There are limitations, it is true, to the doctrine relating to special funds or revenue bonds. It is not sufficient that such fund is created but the creditor must be compelled to look to such fund alone. And so it is said in 38 Am. Juris. 150: "It follows that there are at least two well-settled limitations or exceptions to the 'special fund'· doctrine. In the first place, it is well established that an indebtedness or liability is

incurred where, by the terms of the transaction, a municipality is obligated directly or indirectly to maintain or feed the special fund from general or other revenues in addition to those arising from the specific improvement contemplated.  It also seems to be well settled, as a second limitation to the doctrine, that a municipality incurs an indebtedness or liability where, by the terms of the transaction, the municipality may suffer a loss if the special fund is insufficient to pay the obligation incurred."  The corollary of this would seem to be that if the municipality is not obligated to feed the special fund and where, by the terms of the transaction the municipality cannot suffer a loss, then the debt is not one within the contemplation of the Constitution limiting indebtedness.  The term "debt" is variously defined.  Thus it is said in 38 Am. Juris. 101: "An indebtedness cannot arise unless there is a legal, equitable, or moral obligation to pay a sum of money to another who occupies the position of creditor and who has a legal or moral right to call upon or constrain the debtor to pay."  The terms "moral obligation" and "a moral right" are too elastic as applied herein, and have in some cases led to the holding that revenue bonds or certificates are within the constitutional limitations of indebtedness.  See Rodman vs. Munson (1852) 13 Barb. (N. Y.) 63.  But in Seward vs. Bowers, 37 N. Mex. 385, 24 P. 2d 253 in which it was held that revenue bonds to improve and replace municipal waterworks, payable exclusively from net revenues thereof, did not create a debt within the meaning of the Constitution, the court said: "The fixing of a proper rate and the application of the revenue in the manner directed by law constitutes the legal, equitable, and *moral duty* of the town board of the municipality, and, failing in that, the bondholder may apply to the court to have such rates established and applied."  (Italics supplied).  In Moses vs. Meier, 148

Ore. 185, 35 P. 2d 981, the court refused to recognize any moral obligation in connection with certificates payable out of a special fund, the court saying: "Whether there would be a moral obligation to redeem such certificates of indebtedness is a matter with which this court is not concerned. Suffice it to say there is no legal obligation to do so in the event the special fund is exhausted. * * * a 'debt' within the meaning and purview of the constitutional provision in question is that which the state in any event is bound to pay." In the case of Shields vs. City of Loveland, 74 Colo. 27, 218 P. 913, 915, it was said: "Plaintiffs in error insist, however, that the revenue bonds constitute a debt, and so the lawful limit is exceeded. We do not think that they amount to a debt within the intent of the Constitution or statute. The definitions of the word 'debt' are many, and depend on the context and the general subject with reference to which it is used. 17 C. J. 1371. Its meaning in the sections of the Constitution and statutes now before us must be determined by their purpose, which was to prevent the overburdening of the public and bankruptcy of the municipality. Clearly the revenue bonds are not within that purpose. The public can never be overburdened by that which it is under no obligation to discharge, nor can the city become bankrupt by what it does not have to pay. Nor are these bonds a technical debt. Nothing is my debt unless a judgment for its amount can be recovered against me upon it." In 38 Am. Juris. 101 it is said that to constitute a debt "there must be imposed a pecuniary liability upon the municipality or a charge against its general credit." In Interstate Power Co. vs. McGregor, 230 Ia. 42, 296 N. W. 770, 146 A. L. R. 315, the court held that to constitute a debt against a municipality there must be an obligation which must be met with its funds or property amounting to a pecuniary liability or a charge against

its general credit. In other words, it may be said generally that to constitute a debt within the intendment of the constitutional provision heretofore set out, it must be payable in whole or in part, out of the general resources of the municipality. That would include taxes, and revenue derived from sources other than the system for which the bonds in question are issued. Branigar vs. Village of Riverdale, 396 Ill. 534, 72 N. E. 2d 201, 207, Warden vs. City of Grafton, 115 W. Va. 538, 176 S. E. 706, 707.

The statute under which the bonds herein involved are to be issued provides that no tax or other charge beyond the service charge provided shall be assessed against the users of the sewerage system. That provision is somewhat more limited than provisions in other similar statutes. But since in many, if not most cases, the users of the sewerage system will be identical with the taxpayers, and since under Section 28, Article 1 of our Constitution "all taxation shall be equal and uniform", it would seem to follow that no tax in connection with the sewerage system can be assessed against any taxpayers. We think, moreover, that this would follow even without such specific provision. The bonds are, under the statute, payable solely from the revenue derived from the operation of the sewerage system and they are declared not to be an indebtedness within the constitutional limitation heretofore mentioned. Not being a debt, no tax can be collected to pay them. Nor can any other general income be diverted to that purpose. No suit can be brought thereon against the municipality; they are not a lien or a mortgage on the sewerage system, nor on any other property of the city. And in no event can the municipality lose the system constructed or any other property. Chapter 94 of the Laws of Michigan 1933 contains provisions similar to the provisions of

our statute in question here without mentioning anything about taxation, and the court construing the nature of the bonds issued pursuant to this legislation said in Young vs. City of Ann Arbor, 267 Mich. 241, 255 N. W. 579, 584: "Such bonds are not payable by the city. It does not assume and agree to pay them. It can levy no tax upon the people for their payment. They are exactly what they purport to be, self-liquidating revenue bonds, and the purchaser thereof can have recourse for their payment only to the revenues to be derived from the operation of the sewage disposal plant." In the case of Stark vs. City of Jamestown, (N. D.) 37 N. W. 2d 516, it is said, speaking of the language of the statute similar to that of ours:

"It is difficult to understand how language could have been employed that more clearly would have indicated a purpose and intention that the revenue bonds should not constitute a debt or general obligation on the part of the city than that which was used in the Revenue Bond Law. The provisions of the Revenue Bond Law, of the ordinance, and of the proposed bonds themselves make it clear there is no obligation or liability directly, indirectly, or contingently on the part of the city to pay any part of the principal or interest on such revenue bonds out of its general fund or out of any other fund should the special fund prove to be insufficient. According to the plain terms of the statute and of the ordinance under which the bonds are authorized and will be issued, such bonds are payable as to both principal and interest solely out of the special fund to be established and maintained out of the earnings derived from the operation of the municipal water and sewer utility. The bonds are not secured by mortgage or lien upon any property of the city. The bonds may not be made a charge upon the property of the city or the taxpayers of the city." See also Interstate

Power Co. vs. McGregor, 230 Ia. 42, 296 N. W. 770, 146 A. L. R. 315.

Our legislature then, has, to say the least, interpreted the bonds in question to be bonds which do not come within the constitutional limitation mentioned. While that interpretation is not binding upon us, yet we should naturally be loath to interpret them otherwise. It would seem in fact that in order to declare the bonds in question to be general obligation bonds of the city, we should be compelled to say that the statute in question is in contravention of the Constitution of this state. That was the view taken by the court in Stark vs. City of Jamestown, supra, in which the court said: "The contention of the plaintiff that the revenue bonds in question here create an indebtedness and general obligation of the defendant city resolves to this:— that the legislature is forbidden by the constitution to authorize cities to issue revenue bonds and to pledge for the payment of revenue bonds issued and sold to defray the cost of construction of an extension or improvement of a revenue producing undertaking the revenues derived from the operation of the entire undertaking, including both the original plant and the extension and improvement to be constructed with the proceeds of the revenue bonds. The contention is devoid of merit. Every reasonable presumption is in favor of the constitutionality of a statute enacted by the legislature." The Supreme Court of Michigan, too, in Young vs. City of Ann Arbor, supra, and the Supreme Court of Maryland in Castle Farms Dairy Stores vs. Lexington Market Authorities, 67 Atl. 2d 490, considered the question as to whether revenue bonds were within the contemplation of constitutional debt limitations as a question whether or not the legislation authorizing such bonds was constitutional. We have frequently held that in order that this court may declare

a statute to be unconstitutional, the unconstitutionality must be clear. See State vs. Langley, 53 Wyo. 332, 84 P. 2d. 767.

In the case of Utah Power & Light Co. vs. Ogden City, 95 Utah 161, 79 P. 2d 61, already heretofore cited, the court speaking of revenue bonds said as follows: "The steady growth in recent years of the practice of financing by this method the purchase or construction of public utilities by cities and towns, as denoted by increasing and now general recognition and approval of the special fund doctrine by the courts, affords persuasive, indeed convincing, evidence of its soundness and utility. As such, it is perculiarly in the public interest. Because of the fact that most cities and towns are so largely indebted that they cannot acquire and pay for expensive utilities out of their general revenues, or by bonds within their constitutional limits of debt, the special fund rule offers the only means of relief from helpless dependence upon an exclusive private market." Counsel for plaintiffs deny the validity of the doctrine thus enunciated, but it seems to represent the general opinion of the courts. Even more pertinent is the case of Nourse vs. City of Russellville, 257 Ky. 525, 78 S. W. 2d 761, where the court stated as follows: "So the exercise of governmental powers in the interest of the common welfare must be responsive to changing conditions, developing needs, and advancing science. Present-day ideas of general welfare and public demands should control. The obsolete methods of another day and generation must yield within reason to the modern conception and, particularizing, to progressive sanitary measures. If this were not so, the customs of our ancestors would be fastened upon us like a strait-jacket. * * * The science of sanitation has developed and taught much in recent years. It has demonstrated that nothing contributes more to

secure the preservation of public health than a sanitary system of sewerage disposal, whether it be the modern sewers or septic closets. The benefits of such system are largely lost, unless the inhabitants can be compelled to abandon the menacing structures and to connect their facilities with the system. The community is to be considered as a whole in the matter of preservation of the health of all inhabitants, for a failure by a few to conform to sanitary measures may inflict ill health and death upon many." What has heretofore been said strongly indicates that the bonds proposed to be issued in the case at bar are not general obligation bonds of the City of Cheyenne unless the objections still to be considered are valid.

II. Counsel for plaintiffs contend that the service charge directed to be levied under the statute is in fact a tax. If that were true, then since the service charges must be levied regularly, it should probably be said that a present indebtedness would be created by the issuance of the bonds in contemplation of the constitutional limitation of indebtedness. The case of Arnold vs. Bond, 47 Wyo. 236, 34 P. 2d 28, is not quite in point. That case involved a fund created by the Act of Admission. No fee nor any other charge could ever be levied for the bonds permitted to be issued in that case against any taxpayer or any other person. We do not, however, think that such service charges are a tax. It is doubtless true that to a large extent the users of the sewer and the taxpayers will be identical, but that will not be true entirely so. In many instances a taxpayer—for instance one liable for the poll tax only —will not be paying any fee for the use of the sewer; and in some instances—perhaps not in many—the users of the sewer who must pay a fee will not pay general taxes. A large amount of personal property within the city is subject to general taxes, but will not, as such,

be assessable for the use of the sewer. That is true also in connection with a considerable amount of railroad property and in connection with express companies. Thus a clear distinction exists between property subject to general taxes and property subject to the payment of service fees for the use of the sewer. True, the payment of a fee for the use of a sewer is, practically speaking, substantially like the enforced obligation of a tax. But so are the bills for the use of electric lights, whether the electric-light system is publicly or privately owned; and so are the water bills sent out monthly by the City of Cheyenne. Water bills and bills for the use of the sewer are very much alike. A public sewer system is a public utility the same as a water system. City of Edwardsville vs. Jenkins, 376 Ill. 327, 33 N. E. 2d 598, 134 A. L. R. 891, Payne vs. City of Racine, 217 Wis. 550, 259 N. W. 437 and cases cited. In the case of City of Harrison vs. Braswell, 209 Ark. 1094, 194 S. W. 2d 12, 165 A. L. R. 845, 849, speaking of service charges for the use of a sewer and for water, the court said: "Payments by the users for the service rendered is not a tax within the meaning of the constitutional provision of Art. 16, Section 11." The section mentioned refers to a tax. In the case of State vs. City of Miami, 157 Fla. 726, 27 So. 2d 118, 122, the court stated: "the imposition of fees for the use of the sewage disposal system is not an exercise of the taxing power, nor is it the levy of a special assessment." It is said in Annotations, 146 A. L. R. 341 as follows: "The later cases support the rule laid down in the annotation in 72 A. L. R. 692 and 96 A. L. R. 1390, to the effect that where a municipality or other political subdivision, in acquiring a utility or other property, merely pledges the income or revenue therefrom in payment therefore, and assumes no other liability, its agreement to establish and maintain rates sufficient to pay the purchase price out of such income

does not give rise to an indebtedness within the meaning of an organic debt limitation." In Seward vs. Bowers, 37 N. Mex. 385, 24 P. 2d 253, the court stated:

"The appellant contends that the statute requires the town to establish and collect water rates sufficient to cover the payments to become due, and, failing to collect sufficient to meet the interest and sinking fund requirements, the town would become generally obligated. We see no merit in such theory. The undertaking of the town of Springer is not a guaranty or pledge that the interest or the bonds will be paid, but only a pledge that the town of Springer shall establish a rate that will do so. * * * The charge is upon those who use the water, and not upon the taxpayers, and the taxpayers cannot be called to aid the water user in the retirement of these bonds. The credit of the city is not extended, nor is any money which is derived from taxation or other existing sources of revenue pledged in the payment of the interest or principal upon the bonds, and the city cannot be coerced into applying any of its general revenue." See also 38 Am. Juris., p. 154, Sec. 473. Revenue bonds similar to those involved in this case issued for the construction or extension of a sewerage system have been held not within the constitutional debt limit in the following cases: Guthrie vs. Mesa, 47 Ariz. 336, 56 P. 2d 665, Stark vs. Jamestown (N. D.) 37 N. W. 2d 516, Young vs. Ann Arbor, 267 Mich. 241, 255 N. W. 579, Holland vs. Heavlin, 299 Mich. 465, 300 N. W. 777, State vs. Miami, 157 Fla. 726, 27 So. 2d 118, State vs. Fort Myers, 156 Fla. 681, 24 So. 2d 50, Shainwald vs. Portland, 153 Ore. 167, 55 P. 2d 1151, Anderson vs. Fargo, 64 N. D. 178, 250 N. W. 794, Edwardsville vs. Jenkins, 376 Ill. 327, 33 N. E. 2d 598, 134 A. L. R. 891, Harrison vs. Braswell, 209 Ark. 1094, 194 S. W. 2d 12, 165 A. L. R. 845, Dunn vs. Murray, 306 Ky. 426, 208 S. W.

212

2d 309, Mathers vs. Moss, 202 Ark. 554, 151 S. W. 2d 660.

III. It will be noted that under the statute and the ordinance in question, the principal and interest of the bonds are to be paid out of the income from the entire sewer system, including the present system, as well as the sewerage disposal plant hereafter to be constructed. And it is claimed by counsel for the plaintiffs that by reason of that fact a present indebtedness of the city will be created by the proposed bonds. That, on account of the conflict in the authorities, appears to be the most troublesome point in the case. In annotation in 146 A. L. R. 344, it is stated: "As noted in the earlier annotations on this subject, there is a conflict of authority on the question whether a municipality which owns and operates a utility creates an indebtedness, within the meaning of an organic debt limitation, by the purchase or construction of additions or improvements thereto and pledging in payment therefor the revenue from the entire plant or system, and not merely that from the additions or improvements." It is stated in Fairbanks, Morse & Co. vs. City of Wagoner, Okla., 81 Fed. 2d 209, 219, as follows: "Where a contract is for the purchase of one unit of a utility, the other unit or units of which have been provided for by tax revenues, an agreement to pay for the unit purchased out of the earnings of the entire utility casts an incidental burden on the taxpayers, and falls within the inhibition of constitutional provision like section 26 of article 10, supra. (limiting the city's indebtedness). City of Campbell vs. Arkansas-Missouri Power Co. (C. C. A. 8) 55 F. (2d) 560, 563. But if the purchase price is payable only from the net earnings of the unit purchased, and there is a reasonable allocation of earnings to that unit, the contract is valid." In 38 Am. Juris.

156 it is said: "A number of courts have taken the view that the pledging of the income from the existing property of a municipality, and not merely that from the improvements or additions purchased, amounts to the creation of an indebtedness. As a reason for such position, it has been pointed out that the burden on the general taxpayers would be increased to make up to the general fund of the municipality the amount which formerly went into that fund from the revenues of the existing utility system, and that although tax revenues are not directly pledged to the payment of the utility revenue bonds, the tax levy must be increased, and such revenues will be used indirectly to feed the special fund." Our search of the authorities has not disclosed any case in which this doctrine has been applied to an extension of a sewer system, perhaps because it would be somewhat difficult to segregate the revenues to be derived from the existing sewer system from that which is to be derived from the extension, although such segregation might perhaps be made in the proportion which the value of the present system bears to the cost of the extension. Whether or not bonds could be floated if only the revenue from the extension were applied, we do not know. Perhaps it would be difficult. We are again presented here with a constitutional question, namely as to whether or not the provisions of the statute and ordinance now considered would make the whole statute and the ordinance unconstitutional. In Stark vs. City of Jamestown (N. D.) 37 N. W. 2d 516 which involved an extension of a sewer and water system, it was said: "The weight of authority sustains the view that a city which owns and operates a utility does not create an indebtedness within the meaning of the constitutional debt limitation by pledging in payment of revenue bonds issued and sold to finance an extension or improvement of such utility plant, the revenue derived

from the entire plant, and not merely from the addition or improvement." Many cases are cited. See also in that connection the case of Anderson vs. City of Fargo, 64 N. D. 178, 250 N. W. 794. In the case of Guthrie vs. City of Mesa, 47 Ariz. 336, 56 P. 2d 655 which also involved an extension of a sewer and water system, the court stated as follows: "We are unable, however, to see any distinction in principle between the application of the revenues derived from an old utility to the creation of a special fund and using those from a new utility for the same purpose so long as the income from the old or existing utility is free and unpledged to the payment of any other municipal obligation. The mere fact that the municipality has been using such funds to help discharge its general expenses does not of itself mean that it must continue to do so and may not apply them to some other useful municipal purpose if the best interest of the city demands it." The doctrine thus announced is in accord with the majority view as applied to other utilities. 38 Am. Juris. 155-156. Thus in Seward vs. Bowers, 37 N. Mex. 385, 24 P. 2d 253, 255, the court said: "The town, under the law, may pledge the present revenue from the existing plant, and can certainly pledge the future income of the enlarged or improved plant. It would be a physical impossibility to determine what portion of the proposed revenue is attributable to the improved plant in its entirely, to the improvements alone, or to the present plant." In the case of Searle vs. Town of Haxtun, 84 Colo. 494, 271 P. 629, the court said tersely: "We see, however, no difference in substance between a promise or pledge of the future income of property which now has an income and a promise or pledge of the future income of property which now has none. If one would make the sum secured a debt, the other would." In Farmers State Bank of Conrad vs. City of Conrad, 100

Mont. 415, 47 P. 2d 853, the court said: "where the property purchased is for improvements to a plant already owned by the municipality and the revenue of both the existing plant and of the additions or improvements purchased is pledged or set aside for the payment of the purchase price of the latter, doubt has been expressed as to whether or not an indebtedness is incurred. The weight of authority, however, supports the view that such a transaction does not create a debt or liability where no mortgage or other lien is placed on existing property of the city, but it is otherwise where a mortgage or lien is imposed upon property already owned by the municipality, or upon other property in addition to that purchased." In the case at bar, the record fails to disclose that any service charges are levied for the use of the presently existing sewer system, so that no revenue derived therefrom would be diverted to help pay for the principal of or interest on the proposed bonds. And at least in view of that fact, we think we should here apply the majority rule on the subject.

Our conclusion herein accordingly is that the proposed bonds herein will not be general obligation bonds of the City of Cheyenne, but that they are what they purport to be, revenue bonds, payable solely out of a fund to be created and are not a debt within the meaning of Section 5, Article 16 of the Constitution of this state. The judgment of the District Court is accordingly affirmed.

*Affirmed.*

RINER, C. J. and KIMBALL, J., concur.